Harrietta Ellen WEAVER, a Minor, by Shirley L. Weaver, Her Mother and Next Friend, Plaintiff-Appellant,

v.

ARTHUR A. SCHNEIDER REALTY COMPANY, a Corporation, Defendant-Respondent.

No. 50086.

Supreme Court of Missouri,

En Banc.

July 13, 1964.

Rehearing Denied Sept. 14, 1964.

Hubert I. Binowitz, Hoffman & Binowitz, St. Louis, for plaintiff-appellant.

Burton H. Shostak, R. E. Keaney, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent.

HYDE, Judge.

Action for $18,500.00 damages for personal injuries. The court dismissed for failure of plaintiff's petition to state facts entitling plaintiff to any relief and plaintiff has appealed.

Plaintiff's petition alleged that she resided in a multiple dwelling house, in St. Louis, with her family who were tenants of defendant. Allegations of the petition as to facts, negligence and injury were as follows:

"That on or about the 31st day of July, 1962, plaintiff was approximately sixteen months of age and was situated in the common hallway located in the abovementioned premises at which time plaintiff consumed pieces of plaster which had been allowed to fall from the ceiling and wall of said

common hallway and plaintiff, as the direct result of the negligence and carelessness of defendant in the maintenance of said common hallway, sustained serious and permanent injuries.

"That the aforesaid common hallway, and at the point where said plaster had fallen, was in a dangerous and unsafe condition as a result of said fallen plaster, the walls and ceilings thereof being in a rotted and decayed condition; that said condition had existed for a sufficient length of time and defendant knew or by the exercise of ordinary care should have known that said condition was dangerous and unsafe for persons in the area and more particularly those of tender years such as plaintiff, as said pieces of fallen plaster were poisonous to the human system and would likely have been consumed by such persons.

"That plaintiff's injuries and damages were the direct and proximate result of the negligence and carelessness of defendant in the following particulars:

"A) Defendant negligently and carelessly maintained said common hallway and the walls and ceilings thereof in a rotted and decayed condition so as to allow pieces of plaster to fall therefrom to the floor and created said dangerous condition.

"B) Defendant negligently and carelessly failed and omitted to remove from said hallway said fallen pieces of plaster."

The trial court's view was: "It could not be reasonably foreseen that plaintiff would eat plaster, and be injured." Plaintiff cites Acosta v. Irdank Realty Co., 38 Misc. 2d 859, 238 N.Y.S.2d 713, in which an owner of a multiple dwelling was found negligent in failing after notice to repair walls from which paint and plaster had been falling to the floor. A two-year-old child of a tenant sustained injuries from eating the plaster and paint. The court found plaintiff entitled to damages saying: "That small children go around the house picking up everything within their reach and placing it in their mouths and attempting to eat

it is well known. They often have a craving to put in their mouths and eat most unusual things. It would not be unreasonable, therefore, to foresee that Yvette (plaintiff) would pick up pieces of plaster and paint if they were lying around and eat them. * * * [I]n the setting and surrounding conditions which existed at the premises in question, the hazard which the broken walls presented should have been reasonably foreseeable to the landlord."

However, there is one very significant difference between the Acosta case and this one. In the Acosta case, the defective walls were those of the apartment in which the child lived with her parents (defendant's tenants) and, of course, her presence there was known and expected. The landlord had the duty to keep the interior walls of the apartment in proper repair under the New York Multiple Dwelling Law and the court found the existing condition was in violation of that law. In this case, the defective condition was in a common hallway and it is not alleged that such small children as plaintiff were ever in the hallway alone or allowed to play there or that defendant had any notice of the presence of such small children there or any reason to expect them to be in the hallway without an older person in charge.

Certainly the petition states facts showing a violation of defendant's duty to its tenants and members of tenants' families to keep the common hallway in repair. As to the liability of a landlord for injuries to members of a tenant's family for such a failure see 32 Am.Jur. 567, Landlord and Tenant, Sec. 691; 52 C.J.S. Landlord and Tenant § 419, p. 66; Prosser on Torts, p. 471, Sec. 80. Of course, for the condition of hallway alleged, the landlord would be liable for injuries due to loose plaster falling on a member of the tenant's family or for one of them falling because it was on the floor, as such results clearly would be foreseeable results of failure to remedy such condition. However, defendant says its duty "does not extend to a result which is extraordinary and unusual and not the natural and probable consequences of his act or omission."

Therefore, while defendant had a duty to his tenants and members of their families to repair the condition shown, to prevent injury from external contact with falling or fallen plaster, the decisive question here is: Under the facts alleged, did defendant have the duty to plaintiff to prevent, by repairs or removal of the plaster, the kind of injury plaintiff sustained?

Defendant, citing also such cases as Davidson v. Hennegin, Mo.Sup., 304 S.W. 2d 836; Mann v. Pulliam, 344 Mo. 543, 127 S.W.2d 426; American Brewing Association v. Talbot, 141 Mo. 674, 42 S.W. 679; Pietraschke v. Pollnow, Mo.App., 147 S.W. 2d 167, relies on the rule of Palsgraf v. Long Island Railroad Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253: "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." In the Palsgraf case, as explained in Prosser on Torts 169, Sec. 36, "A passenger was running to catch one of the defendant's trains. The defendant's servants, assisting him to board it, dislodged a package from his arms, and it fell upon the rails. The package contained fireworks, which exploded with some violence. The concussion overturned some scales, many feet away at the other end of the platform, and they fell upon the plaintiff and injured her. The defendant's servants, who were found by the jury to be negligent, could have foreseen harm to the package, or at most to the passenger boarding the train; no harm to the plaintiff could possibly have been anticipated." The rule of Palsgraf is accepted and stated in the American Law Institute Restatement of Torts, Sec. 281, comment c, stating: "If the actor's conduct creates a recognizable risk of harm only to a particular class of persons, the fact that it causes harm to a person of a different class, to whom the actor could not reasonably have anticipated injury, does not render the actor liable to the persons so injured." See Karr v. Chicago, Rock Island and Pacific R. Co., 341 Mo. 536, 108 S.W.2d 44, 48, and cases cited;

Vanacek v. St. Louis Public Service Co., Mo.Sup., 358 S.W.2d 808, 810; Law of Torts, Prosser, 168, Sec. 36, Unforeseeable Plaintiffs.

It has been said that a lessor, knowing the family of a tenant includes young children, may assume those in authority over them will protect them and see that they are not permitted to wander alone where there is danger and that the lessor is not negligent in failing to foresee that parents will not protect their very young children from getting into danger. American Fire & Casualty Co. v. Jackson, USCA 5th, 187 F.2d 379; see also Anderson v. Reeder, 42 Wash.2d 45, 253 P.2d 423; Harakas v. Dickie, 224 Mo.App. 171, 23 S.W.2d 651. In these cases, the danger came from the construction or arrangement of the premises or facilities rather than from failure to repair; but this view seems reasonably applicable to children as young as plaintiff being in this hallway. See also McKenna v. Andreassi, 292 Mass. 213, 197 N.E. 879, 884. In a case in which lattice work protecting a stairway landing, where "[c]hildren had been in the habit of playing," was allowed to become loose causing a child playing there to fall, it was held "that the rule that one making an unintended use of the property cannot recover for its negligent maintenance is 'inapplicable to infant invitees attracted by dangerous objects * * *.'" Freeman v. Mazzera, 150 Cal.App.2d 61, 309 P.2d 510, 511. See New York Eskimo Pie Corporation v. Rataj, USCA 3rd, 73 F.2d 184; Saad v. Pappageorge, 82 N.H. 294, 133 A. 24; see also 31A C.J.S. Evidence § 80, p. 93; 65 C.J.S. Negligence § 12 b, p. 400, as to characteristics, capacities and propensities of children. Here plaintiff certainly was making an unintended use of the fallen plaster and the question is whether at that place such a use by a small child was within the range of apprehension under the facts alleged.

The Restatement of Torts, as to legal cause, says in Sec. 431: "The actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b)

there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." As to foreseeability, the Restatement in Sec. 435 says: (1) "If the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner in which it occurred does not prevent him from being liable." See Phillips v. Stockman, Mo.App., 351 S.W.2d 464, 474, and cases cited; Tharp v. Monsees, Mo.Sup., 327 S.W.2d 889, 894.

In 1948, the following was added to Sec. 435: "(2) The actor's conduct is not a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm." (Restatement 1948 Supplement, p. 736.) Comment d, concerning this added provision states: "A result of the actor's tortious conduct may be one which, either in its extent or the manner in which or the sequence of events through which the conduct operates to bring about the harm, is altogether different from the result which the actor at the time of his negligence recognized or should have recognized as likely to result therefrom. None the less, after the event, such a result may not appear to the court to be so highly extraordinary as to prevent the actor's conduct from being considered a legal cause of it. What the actor does or should expect depends upon the circumstances which he knows or should know and his forecast in the light of these circumstances as to what is likely to happen. The court's judgment, as to whether the harm is a normal or highly extraordinary result, is made after the event with the full knowledge of all that has happened." Comment e is: "It is impossible to state any definite rules by which it can be determined that a particular result of the actor's negligent conduct is so highly extraordinary as to prevent the conduct from being a legal cause of that result. This is a matter for the judgment of the court formulated after the event, and therefore, with the knowledge of the effect that was produced." See also 2 Law of Torts, Harper and James, 1134–1151, Sec. 20.5.

Looking back from the harm to plaintiff to defendant's negligent conduct, our view is that the result (plaintiff being in the hallway and sustaining injury by putting fallen plaster in her mouth) does appear to be so highly extraordinary, under the facts alleged, as to prevent defendant's conduct from being considered the legal cause of it, when there is nothing in the petition to show that defendant knew or had any reason to expect that such small children would be in the hallway unattended. We, therefore, hold the trial court reached the correct result in dismissing plaintiff's petition.

The judgment is affirmed.

EAGER, C. J., and DALTON, HOLMAN and HENLEY, JJ., concur.

STORCKMAN and LEEDY, JJ., dissent and adopt as their joint dissenting opinion the opinion prepared by PRITCHARD, C., in Division Two.

PRITCHARD, Commissioner (dissenting).

Plaintiff, a child approximately sixteen months old at the time of her alleged injury, has appealed from a judgment of dismissal of her petition for damages for personal injuries in the amount of $18,500. The ground for the appeal is that the trial court erred in sustaining defendant's motion to dismiss the petition for failure to state a claim for relief and upon the trial court's stated reason that "It could not be reasonably foreseen that plaintiff would eat plaster, and be injured."

Plaintiff's petition is as follows:

"Comes now plaintiff, a minor, by and through her duly appointed next friend, and for her cause of action against

Defendant herein states to the Court as follows:

I

"That at all times hereinmentioned defendant was and is now a corporation duly organized and existing under the laws of this state and engaged in the general real estate business in the area of Metropolitan St. Louis, Missouri.

II

"That on or about the 31st day of July, 1962, defendant owned a multiple dwelling house located at 5645 Cates Avenue, City of St. Louis, Missouri.

III

"That at all times hereinmentioned plaintiff resided at the aforesaid premises together with her family who were tenants of defendant.

IV

"That on or about the 31st day of July, 1962, plaintiff was approximately sixteen months of age and was situated in the common hallway located in the abovementioned premises at which time plaintiff consumed pieces of plaster which had been allowed to fall from the ceiling and wall of said common hallway and plaintiff, as the direct result of the negligence and carelessness of defendant in the maintenance of said common hallway, sustained serious and permanent injuries.

V

"That the aforesaid common hallway, and at the point where said plaster had fallen, was in a dangerous and unsafe condition as a result of said fallen plaster, the walls and ceilings thereof being in a rotted and decayed condition; that said condition had existed for a sufficient length of time and defendant knew or by the exercise of ordinary care should have know_

that said condition was dangerous and unsafe for persons in the area and more particularly those of tender years such as plaintiff, as said pieces of fallen plaster were poisonous to the human system and would likely have been consumed by such persons.

VI

"That plaintiff's injuries and damages were the direct and proximate result of the negligence and carelessness of defendant in the following particulars:

"A) Defendant negligently and carelessly maintained said common hallway and the walls and ceilings thereof in a rotted and decayed condition so as to allow pieces of plaster to fall therefrom to the floor and created said dangerous condition.

"B) Defendant negligently and carelessly failed and omitted to remove from said hallway said fallen pieces of plaster.

VII

"That as a direct result of defendant's negligence and carelessness aforesaid plaintiff was caused to suffer from a condition of lead poisoning and iron deficiency anemia; that plaintiff vomited and was nauseated; that plaintiff was caused to be hospitalized for a period of two weeks; that plaintiff's stomach and internal organs and circulatory system were damaged and impaired; that said injuries are serious and permanent; that plaintiff was caused to suffer great pain of body and mind as a result of said injuries and will in the future so suffer; that plaintiff has been caused to undergo medical care and treatment and will be caused to undergo same in the future.

"WHEREFORE, plaintiff prays for judgment against defendant in the amount of EIGHTEEN THOUSAND FIVE HUNDRED DOLLARS (18,-

500.00) together with her costs herein expended."

We defer to the well-established rule that in adjudging plaintiff's petition as to its sufficiency in stating a claim upon which relief may be granted we must deem her well-pleaded allegations to be true and give them a liberal construction, according thereto their reasonable and fair intendment. Dallas v. City of St. Louis, Mo., 338 S.W.2d 39; Fitzpatrick v. Federer, Mo., 315 S.W.2d 826.

It is pleaded that there is a common hallway on defendant's premises, and it may therefore be concluded that defendant had the *control* over the hallway and was charged with the duty to keep and maintain it in a reasonably safe condition for its tenants, and if it failed to do so and an injury occurred as a proximate result of such failure, defendant would be answerable in damages for its negligence. Darlington v. Railway Exchange Bldg., 353 Mo. 569, 183 S.W.2d 101; Wilson v. Jones, Mo.App., 182 S.W. 756.

Plaintiff's contention with respect to the foreseeability issue presented (that plaintiff would eat plaster and be injured) is that if the defendant's conduct produces injury to another, the fact that defendant neither foresaw nor should have foreseen the extent of harm or the manner in which it occurred does not absolve it from liability; that it is not necessary that plaintiff demonstrate that the particular consequences of such negligence could have been foreseen, but only that the injuries are the natural, although not the necessary and inevitable result of defendant's negligence, and defendant may be liable for anything which appears to be the natural and probable consequence of his act or omission. Plaintiff says further that defendant is required only to foresee that harm in some manner will result from the alleged negligent conduct in permitting the fallen plaster to be in the common hallway of defendant's premises.

Defendant asserts that the alleged facts do not impose upon defendant any duty to protect its tenants from any such remote and unforeseeable consequence; that the duty of a defendant does not extend to a result which is extraordinary and unusual and not the natural and probable consequences of his act or omission.

Thus the parties are in accord that the rule upon "foreseeability" in negligence cases in Missouri is that *some* injury as a result of the negligent act or omission must have been reasonably foreseeable. "The question is not whether the particular injury under consideration should have been anticipated, but whether, after the occurrence, such injury then appeared to have been the reasonable and probable consequence of the negligent act or omission. And, it is immaterial that the precise manner in which the injury occurred was neither foreseen nor foreseeable." Phillips v. Stockman, Mo.App., 351 S.W.2d 464, 474. See also Tharp v. Monsees, Mo., 327 S.W.2d 889, 894 [6], where this court said: "It is of course unnecessary that the party charged should have anticipated the very injury complained of or anticipated that it would have happened in the exact manner that it did. All that is necessary is that he knew or ought to have known that there was an appreciable chance some injury would result."

The question which is resolved under the alleged facts of this case and the briefs of the parties is whether or not the occurrence in controversy was so extraordinary and unusual that defendant could not and would not be held to have expected or foreseen it so that it would have been under a duty to take precautionary measures which would have prevented the incident.

Under the alleged facts of this case, it is seen that plaintiff, being a small child, rightfully in the common hallway where defendant could reasonably anticipate she would be, might pick up the easily accessible poisonous plaster from the floorway where

it had fallen from the walls and ceiling which were in a decayed and rotted condition. We take judicial notice of facts relating to the habits, curiosity and propensities of small children, 31A C.J.S. Evidence § 80, p. 93; Haberly v. Reardon Company, Mo., 319 S.W.2d 859, 868 [11] (child's proclivity to assist parent who was painting with Bondex); Ozbun v. Vance, Mo., 323 S.W.2d 771, 775 [3, 4] (acts of a child four years old are wholly unpredictable and they are almost entirely devoid of an appreciation of danger); 65 C.J.S. Negligence § 12 b, p. 400. Thus, it is common knowledge, by which defendant may be charged, that children such as the plaintiff have a natural proclivity to place all kinds of objects in their mouths, and that their parents or custodians constantly must be on guard to prevent their doing this and to train them not to do so. Under the pleaded circumstances here, it could reasonably be foreseen that this small child would thus ingest the foreign poisonous substance, made accessible to her by defendant's lack of due care, into her system and be thereby injured. See Acosta v. Irdank Realty Corp., 38 Misc.2d 859, 238 N.Y.S.2d 713, where the infant plaintiff ate lead paint which peeled off walls and which had fallen to the floor in a multiple dwelling. The court there said with respect to the occurrence being reasonably foreseeable, "that small children go around the house picking up everything within their reach and placing it in their mouths and attempting to eat it is well known. They often have a craving to put in their mouths and eat most unusual things. It would not be unreasonable, therefore, to foresee that Yvette would pick up pieces of plaster and paint if they were lying around and eat them."

We appreciate defendant's position that it is not an insurer for the safety of plaintiff, and we note the cases cited upon the proposition that it is not negligence not to take precautionary measures to prevent an injury, which if taken, would have prevented it, when the injury could not reasonably have been anticipated and would not, unless under exceptional circumstances, have happened. Mann v. Pulliam, 344 Mo. 543, 127 S.W.2d 426; American Brewing Association v. Talbot, 141 Mo. 674, 42 S.W. 679, 682. See also 65 C.J.S. Negligence § 108, p. 661. However, under the pleaded circumstances of this case, we hold that the occurrence was not so unusual, extraordinary and exceptional that defendant could not reasonably be held to have foreseen that the infant plaintiff would ingest the deleterious substance as a natural and probable consequence of defendant's negligent omission of duty in keeping the walls and ceiling of its hallway in good repair. 65 C.J.S. Negligence § 66, p. 558.

It is our view that the judgment of dismissal of plaintiff's petition should be reversed and the cause remanded.